ANNA FARRELL, Admx.

*v.*

THE CITY OF CHICAGO.

*Opinion filed October 25, 1902.*

CONTRACTS—*when contractor on public work cannot recover against city.* If a contractor agrees to take pay only out of special assessments made or to be made for the improvement and to take the risk of their invalidity, he has no right of action against the city in case a portion of the assessment is held invalid, except to compel a supplemental assessment by *mandamus.* (*Clayburgh* v. *Chicago,* 25 Ill. 440, and *Wheeler* v. *Chicago,* 24 id. 105, distinguished.)

*City of Chicago* v. *Farrell,* 100 Ill. App. 204, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

JAMES J. KELLY, and CHESTER FIREBAUGH, for appellant.

CHARLES M. WALKER, Corporation Counsel, and ROSWELL B. MASON, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The Appellate Court, for errors of law, reversed, without remanding, a judgment for $8657.11, rendered by the circuit court of Cook county against the appellee in an action of assumpsit brought against it by the appellant.

The suit was to recover the balance unpaid on a voucher issued by the city on November 12, 1894, to the plaintiff's intestate, Patrick Farrell, under a contract in a special assessment proceeding for paving West Madison street. The voucher was originally for $11,807.11, but it had been credited with payments from special assessments collected by the city, leaving only a balance unpaid of $8657.11.   It appears that judgment of confirmation was refused by the county court as to $7413.18 of the total of $38,481.85 specially assessed on property alleged to be benefited. Of the total cost of the improvement, $2616.43 was assessed against the city, which is payable out of its revenues derived from general taxation.   No supplemental or additional assessment was ever made by the city, and the evidence fails to show that the plaintiff or Patrick Farrell ever requested the city council to make such new assessment, though demands for payment and for a confession of judgment for the amount were frequently made before this suit was brought.

Farrell's contract with the city provided that "no act of the city done or suffered to be done shall be construed as a collection of any special assessment, or part thereof, until the money due thereon shall be actually paid into the city treasury; that said sums of money due the contractor shall be payable out of the proceeds of the special assessment levied and out of the proceeds of any special assessment which shall hereafter be levied for said improvement, and also from the general fund of said city as assessed or to be assessed against said city as its relative equitable proportion of the estimated costs of said improvement, the proportion to be paid by said city of the amounts assessed or to be assessed against said city being the proportion which the whole amount assessed or to be assessed bears or shall bear to the actual cost of said improvement, the said party of the first part agreeing to make no claim against said city in any event, except from collection of the special assessment made or

to be made for the improvement, and to take all risk of the invalidity of any such special assessments; said party of the second part not to be liable, in any event, by reason of the invalidity of such assessment or the proceedings therein or for failure to collect the same; said estimates (all moneys due contractor) will accordingly be paid fully only when the assessment or assessments levied and to be levied for said improvement shall be wholly collected, so that the aggregate of all payments to be made on all vouchers and estimates on account of said improvement, issued prior to full collection of the assessment, together with amount of said assessment to be rebated to property owners, shall not exceed the full amount of cash collections in the treasury of said city to the credit of said special assessment fund." And the question presented for decision is whether the city of Chicago is liable in this action for the balance due on said voucher or warrant, or for work, labor and materials done and furnished in said improvement which it has accepted and had the use and benefit of for seven or eight years. The trial court instructed the jury to find for the plaintiff, and refused an instruction to find for defendant.

We are of the opinion that the judgment of the Appellate Court in reversing the judgment and not remanding the cause was correct. The promise was to pay only out of the assessments made or to be made for the improvement, and Farrell had expressly agreed to make no claim except from collections of the special assessments made or to be made, and to take all risks of their invalidity. If it was the duty of the city to make a new assessment on the property benefited to pay the balance of the cost of the work, the performance of such duty might have been compelled by *mandamus*, (*People ex rel.* v. *City of Pontiac*, 185 Ill. 437,) but it is not liable in this action for the balance due. (*Foster* v. *City of Alton*, 173 Ill. 587.) As pointed out in the case last cited, section 49 of article 9 of the statute under which the proceedings were

had provided that "all persons taking any contracts with the city or village who agree to be paid from special assessments, shall have no claim or lien upon the city or village in any event, except from the collections of the special assessments made for the work contracted for." If the city could be made liable generally for payment of the amounts due under such contracts, then by mere evasion or neglect of duty on the part of city officers, acquiesced in by the contractor, all of its special liabilities provided by law to be discharged from funds collected from property specially benefited would be converted into general liabilities, to be discharged from its general revenues derived from general taxation. It is not meant that the contractor in this case acquiesced in the inaction of the city, for he kept insisting, for years, that his demands should be paid, except that, as before said, the record does not show any demand made on the proper authorities for another assessment. Nor does the record show what the defect in the assessment proceedings was.

Appellant cites in support of the decision of the trial court, *Clayburgh* v. *City of Chicago*, 25 Ill. 440, and *Wheeler* v. *City of Chicago*, 24 id. 105. But in these cases the parties had suffered damages from the opening of the public streets by the city over their property and there was no contract controlling the question of liability, while the suit at bar is on a contract the terms of which preclude the right of recovery. The general liability of municipal corporations has been denied in many similar cases: *Foster* v. *City of Alton*, 173 Ill. 587; *Thomas* v. *City of Olympia*, 12 Wash. 465; *Stevens* v. *City of Spokane*, 45 Pac. Rep. 31; *Village of Morgan Park* v. *Gahan*, 136 Ill. 515; *Illinois Hospital for the Insane* v. *Higgins*, 15 id. 185; *Argenti* v. *City of SanFrancisco*, 16 Cal. 255; *Lake* v. *Trustees of Williamsburg*, 4 Denio, 520; *Reock* v. *Mayor*, 33 N. J. L. 130; 1 Dillon on Mun. Corp. (4th ed.) par. 482, p. 557; *Tipton* v. *Jones*, 77 Ind. 307; *Fletcher* v. *City of Oshkosh*, 18 Wis. 228; *City of Greencastle* v. *Allen*, 43 Ind. 347; *Goodrich* v. *City of Detroit*,

198—36

12 Mich. 279; *People* v. *City of Syracuse*, 144 N. Y. 63; *City of Pontiac* v. *Talbot Paving Co.* 94 Fed. Rep. 65; 96 id. 679.

So far as the amount assessed to the city is concerned, it does not appear that judgment was refused in the special assessment proceeding, or that any reason exists why the city cannot be compelled to levy a tax to pay it. At all events, we are of the opinion that under the pleadings and proof there can be no recovery in this action, and that the trial court should have so instructed the jury.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*